Our last case this morning is Mauricio Usme v. CMI Leisure Management, Inc., et al. Case number 22-11324. Take your time, Mr. Parrish, and we'll hear from you whenever you're ready. May it please the Court, Philip Parrish on behalf of the appellants, seated to my left is Robert Peltz, one of the trial attorneys. Among the errors which the district court made in this case is that he declared that this Court's binding opinion in Zumlitz v. Norwegian American was outdated and refused to follow it. Mr. Parrish, I think you may be right about that point, but I'm not sure that it matters. Let me tell you where I think I am, at least on part of this case. Zumlitz, I think, doesn't involve a forum selection clause or a choice of law clause, right? It's a little uncertain. It's not mentioned. I will say that Rhoditis involved both, and Zumlitz I'm talking about Zumlitz. That case doesn't say that it had a forum selection clause or a choice of law clause, right? I do not believe so. Okay. So, isn't the first question in this case, before you get to anything else, whether or not under United States law, a federal court can enforce a choice of law slash forum selection clause in a case where a seaman is asserting a federal Jones Act claim. Isn't that the very, very, very first issue in this case that has to be resolved? I think so. I think that the Rhoditis, the Richardson-Rhoditis factors essentially consider that. Rhoditis, which was, by the way, originated from this court, the old Fifth Circuit. It was a Southern District of Alabama case, so it's even within the Eleventh Circuit footprint, was decided in 1969, and the Supreme Court essentially agreed with the analysis undertaken by this court at the circuit level and found that in a situation where you have a Jones Act claim, notwithstanding the other seven Lawritson factors, and virtually all of them either favor U.S. application law here or are at worst neutral, where you have a Jones Act case, but you have a, in Rhoditis, it was an ostensibly Greek forum selection clause and choice of law clause, both were in the Greek seaman's contract, but that was to the United States. Here we have a clear Miami-based, Florida-based base of operations, which merely uses a mail drop. Their own president testified, we put in a deposition from another case because we really didn't have any chance to develop the record here below. This was just a mail drop. They pay a little bit of money to a Bahamian law firm to act as a mail drop. There are no employees, there's no business whatsoever conducted in the Bahamas. The only purpose for the choice of law clause in this case that I can see is to avoid having a Jones Act trial because, as we know, in the Bahamas, there is no right to a jury trial. We have a situation where there's an entire body of law developed starting with Lawritson through Rhoditis, and in virtually every seaman's case, there's a choice of law provision and a provision in terms of where the case, a forum selection clause. What do those cases, in your view, say about what to do about the enforceability of a forum selection clause or a choice of law clause? That it is merely one of the factors in determining whether or not the Jones Act in U.S. maritime law applies. It's simply a factor. It is not an overriding factor, and in fact, again, in Rhoditis . . . Basically, the holding that you get from those cases is that in cases where federal remedies might potentially be available in the future, parties cannot bargain away the forum or the choice of law. Not if the Jones Act is going to apply, and not in a situation . . . Why is the Jones Act sacrosanct? Why doesn't it apply to all sorts of other claims by seamen, like a Seaman's Act wage claim or others? Your argument seems to be that when federal remedies are involved, statutory federal remedies for seamen, parties are not allowed to contractually agree to the forum or the choice of law. Is that the position ultimately? That's the first position. The fallback position would be this is not a bargain for . . . I get that. That's related to this case and this agreement and these people, but what's the best case for the proposition that where federal remedies are involved, parties cannot bargain away the forum or the choice of law? We have a number of cases where parties have agreed to arbitrate claims by seamen to foreign jurisdictions and some of them involve under the substantive law of a different sovereign. We've upheld those for better or for worse. What is the best case or authority for the proposition that you can't bargain away forum or choice of law when a seaman is involved? First, thank you for the opportunity. I think for the worst, but we're not here on an arbitration case. The reason that the arbitration case was decided differently was when you're looking at whether a federal statute such as the Jones Act establishes a strong public policy and therefore, whether a forum selection clause would contravene a strong public policy. In the Jones Act case, when there's not an arbitration provision under the convention, you're dealing just with the Jones Act. In Bautista and Lindo, in the other cases that involve the convention and arbitration on the convention, the court had to look at two competing statutes. In fact, a statute, the Jones Act on one hand and a ratified treaty and its implementing statute on the other hand and therefore, make a decision. In Bautista and Lindo and the other cases, this court along with as the Fifth Circuit had done before, opted on the side of the treaty and the statute and didn't have just the Jones Act sitting there on its lonesome as the public policy. You're asking me actually, Judge, for the best case that I have. Isn't the simple answer to the question being posed by Judge Jordan is yes, it's true that an appropriate employee and an appropriate employer can bargain away their Jones Act right just like they can bargain away anything else but that's not what you have here. Isn't that really the answer? Or is it your view that under no circumstances can an employer and a seaman employee bargain away Jones Act and general maritime law of negligence? I think you made a good point, Judge Marcus. If we had, typically, seaman's contracts aren't bargained at all. Maybe the captain and some of the senior officers get a chance or maybe there are cases where there's a union involved. We have here just a standard seaman's contract where there was no evidence of any bargaining. The cases upon which defendant relies such as Bremen versus Zapata, those cases involve a situation where we were dealing with two sophisticated corporations and it bears noting that in Bremen, the Supreme Court said, here we see an American company with special expertise contracting with a foreign company to tow a complex machine thousands of miles across seas and oceans. I thought what we were here about is starting with the simple proposition that in order to rely on a contract to which they're not a party, a non-signatory must invoke one of the exceptions to the general rule. In this case, the district court started that way and said there is an exception and the exception is found in equitable estoppel. The question is whether he properly invoked equitable estoppel. Isn't that really the heart of or my misunderstanding? That's one of the reasons that we're here because he reviewed, he permitted these defendants who are the Miami-based defendants and who did not sign this so-called contract to utilize the contract even though there was no concerted misconduct and the causes of action were not specifically based upon a breach of the contract. They were not, you know. So your argument here is that the district court made an error of law in invoking the doctrine of estoppel here, right? That is the second argument in our brief. Yes, Your Honor. All right. Why don't you help me with what you call your second argument? Why don't you make that one for me? Why did the district court err as a matter of law in invoking the doctrine of equitable estoppel on a Jones Act and maritime, general maritime negligence claim? Because the plaintiff must actually depend on the underlying contract in order to make out his claim. This was a claim based not on the contract but on a borrowed servant doctrine and borrowed servant doctrine is well recognized in various forms of maritime cases. In Langford, it was the LHWCA but it can also apply in Jones Act cases and so we are, and the issue of whether we had made out a claim for borrowed servant liability. That was one of the issues raised by the motion to dismiss. The district court said I don't need to reach that because I'm saying that I'm applying Atlantic Marine and therefore I'm going to move right to the public interest factors and I, and he only perfunctorily, he basically took it on faith that because the entities that were allegedly, had signed the contract on behalf of the Bahamian defendants were located in the Bahamas, notwithstanding the fact that no, they really aren't, there's just a mail drop there, there's no people there. If you were to look at the, do a standard form of non-convenience analysis here, you don't have any of the private interest factors or the public interest factors there. Florida is much more interested in this case I think than the Bahamas where we have a base of operations as in Rhoditis right here in Florida and they are apparently creating two mail drop companies through which they ostensibly employ everybody on their vessels, seemingly for no other reason than to avoid Jones Act liability in trials because there's no other reason for it. Didn't the defendants sign the employment agreements as agents for the purported owners? Yes. What relevance, if any, does that have in figuring out equitable estoppel? I don't think it helps, it doesn't help the defendants. They signed merely as agents for, so they're not signing it on their own behalf, they're signing it, it's part of this charade basically that's going on, that they are signing on behalf of an entity that has no people assigned for it. It has no employees, it has no office, so we neither have any of the buyers, the buyers case I think, Judge Mark is what you're getting to, on the equitable estoppel. We don't have, the plaintiff must actually depend on the underlying contract, in fact we most specifically are not under the borrowed servant doctrine, nor is there any concerted misconduct. The companies in the Bahamas can't engage in conduct at all, so there's no concerted misconduct between two entities. Right, so as I understand your argument on equitable estoppel, it's really quite simple. It is that the plaintiffs here are not invoking the contract to sustain their Jones Act claim, they're not invoking the contract to sustain their claims on general maritime negligence. And unless and until they were basing their claim on that, the doctrine of equitable estoppel simply would not apply. That was the ground upon which the district court ruled and there was the error. That was certainly one of the errors. The other error is if we get to, well, that would take care of it. If this court were to rule that it can't rely on the contract, then we don't have to worry about the form selection clause and whether Atlantic Marine and Bremen apply here versus Rhode Island. But of course, Vikund is in a different position, right? The other defendant? Because the district court found that the CMI Miami companies could invoke the form selection clause based on the doctrine of equitable estoppel, but it did not employ that rationale with regard to Vikund, did it? So in a footnote, let me get to that footnote. Let me read you the one thing, all he said, it was in really one short paragraph. Plaintiffs allege Vikund participated with the other defendants to determine whether to undertake the March 15th, 2020 voyage and assisted the other defendants in providing plaintiffs with a safe place to work. Accordingly, the court finds that the plaintiff's claims against Vikund are, quote, so closely related to the dispute that it is foreseeable that these claims must also be litigated in the Bahamas. That was the beginning, the middle, and the end of the analysis as to Vikund. The district judge said nothing about equitable estoppel. And the language used here is very close to the but-for test. He's talking about foreseeability, but we know that simple but-for, you know, but-for Vikund's involvement here, none of this would have happened. That's not sufficient to invoke equitable estoppel either. So I don't know if the court wants me to get in, go back at all to Zumlitz, Roditis, Loritzen. No, we've taken you way over your time, and depending on what happens with your opponent's argument, we may come back to some of those issues in your rebuttal, Mr. Hirsch. Thank you. Ms. Sullivan. Good morning. May it please the court. My name is Alicia Sullivan, and I'm here on behalf of the appellees and the defendants in the case before the district court. At the heart of this appeal is whether the appellants should be permitted to disregard the forum selection clause, excuse me, agreed to voluntarily in their employment contracts by bringing claims that clearly arise out of that very same employment against defendants who were not their employers. Defendants who are what? I'm sorry? Oh, against defendants who were not their employers. If they're not their employers, how do they take advantage of a contract they didn't sign? Right, and that's where we get into the district court's analysis of why these three defendants were able to invoke the forum selection clause of the employment contracts. And I think that while equitable estoppel was the basis for at least the CMI Miami entities, there are numerous exceptions to the rule that a party who's not a signatory to a contract can't ordinarily invoke it. Well, let's talk about what the district court ruled. The district courts conceded that these Miami defendants were not a part, they were non-signatories to the contract, right? Well, they assigned it as agent. Right. So he had to find some other ground. And what he did was he said, the doctrine of equitable estoppel provides an exception to the general rule and it applies here. Tell me why he was right about that's the way the district court reached the conclusion he did. Right, I agree with you. I think the district court- So you tell me, or do you think he erred in equitable estoppel and we really have to find another ground so you lose? No, I don't think the district court erred. Well, then how could you use equitable estoppel? The general principle allows a non-signatory to enforce the provisions of a contract against the signatory where the signatory to the contract relies on the terms of the contract to assert his claim. But as I understand the seven seamen here, the doctor, the security officer and the five other seamen, their claims are not pegged on this contract in any way. Their claims are pegged to the Jones Act and to the general rules of negligence in maritime jurisdiction. And if that's so, how does equitable estoppel provide a basis to get around the non-signatory to the contract? Right, and to answer that question I would go to the Byers case which appellants do rely on for that proposition that they must actually rely on the contract to state their claim. And what Byers also noted was that, quote, the application of equitable estoppel is not a rigid test and each case turns on its facts. And in that case what we had was three parties, two different contracts. So there was a purchase contract and then a financing contract. And the party to the financing contract was trying to enforce the forum selection clause in the purchase contract. What we have here instead is not two distinct interactions with the appellants below. What we have is instead two closely related companies where one is serving as the agent of the other in executing these contracts. So essentially while they don't specifically state, you know, we are relying on this provision of the contract or that provision of the contract, clearly the claims that they're alleging in this case fall within the subject matter of the contract and it is what they entered into the contract to govern. What theories for allowing non-signatories to assert the agreement did you raise below? You raised equitable estoppel. That's correct. Are there any other exceptions that you raised before the district court that it didn't reach? No, there are not bases that we raised that the district court did not reach, but there are bases that the district court relied on that we did not necessarily. Did you raise LIPCON in the district court? Did you make that alternate argument? I apologize, Your Honor. Off the top of my head, I don't recall if that . . . See, the reason I ask the question is that when I looked at it, it looked to me like you didn't raise that in the district court and if indeed that is the case, unless there's some powerful exception, it looks to me like that was waived and that you're really going to stand or fall on equitable estoppel. I might be wrong about that, but that's just my question, whether the district court ever was given this alternate theory, this LIPCON theory. Right, and I believe Your Honor is correct that it may not have been explicitly referenced in our principal brief motion to dismiss. It did come up and the district court did rely on it, but unfortunately, off the top of my head, I can't answer that question for you right now. The reason I raise it, it looks to me like this agency theory, if it wasn't waived, is a very, very difficult question of law. Case law is anything but clear. We've not ruled on it and it looks pretty muddled to me, whether you can use this agency going both ways. You follow what I'm saying, would I? I think I do and I think it's something that they raised in their reply brief essentially saying that just because we as the agents could bind the Bahamian companies to the Forms of Action Clause doesn't mean that we necessarily have the right to invoke it as the agent, if I'm understanding you correctly. What cases do you think provide the sort of legal steps to go through? Putting aside the non-signatory to a contract issue, what case is the best, provides the best instruction for a decision tree in a case where there is a form selection clause, a choice of law clause in a case involving a seaman who is asserting federal statutory remedies? What's the best case that just tells you, okay, when you have this procedural setup, here's your order of decision making. You first have to decide X. If X plays out one way, then you go to Y. If Y plays out one way, then you go to Z. Right, and I think that the Atlantic Marine case answers that question more broadly as pertains to the Jones Act specifically. I was not able to find any circuit court decisions. Or any federal seaman's remedy, Seaman's Wage Act, for example. Right, right. Yeah, and unfortunately there are district court cases on that which we cited in our case that addresses your question head on. Isn't putting aside the non-signatory issue, which I think Judge Marcus is right that that may be threshold, but putting that aside for a moment, isn't the question whether or not a seaman can bargain away forum and substantive law in an employment agreement when federal remedies are at stake? By the way, I didn't find any cases either. Right. I looked very hard and I'm sure my opposing counsel did as well. Yeah, so. Right, which is why I think our arguments on the first point on appeal pass sort of like ships in the night while they're relying on this Sumlich's case to say that the court needs to undertake the choice of law analysis because they're relying on the Jones Act. I believe that the district court followed the proper procedure when it looks to Atlantic Marine as its procedural framework to decide whether to enforce the Forum Selection Clause. Right, but the thing, the problem is that both of those cases are procedurally distinct and therefore distinguishable. Slumless did not involve a Forum Selection Clause or a choice of law clause and Atlantic Marine did not involve a seaman asserting federal statutory remedies. Exactly. And then I think what that comes down to then is the fact that the Sumlich's case or Sumlich's, it simply doesn't apply here. What it is at its core is a choice of law analysis and where the parties have already designated the law and the forum to be applied to any disputes, there's no need to undertake that choice of law analysis in the first instance which is why the appellees take the position that the court properly analyzed the case under Atlantic Marine. Okay. The court was wrong to just think of slumless as outdated though, right? It may be distinguishable but it's not outdated. As a matter of fact, the case that the district court cited for the outdated proposition is a case that went through the same analysis as slumless but just simply came out the other way. Right. And if memory serves, I believe the cases that the, yeah, the district court relied on really didn't support that proposition. So what is the proper sequence of steps? Right. Putting aside the non-signatory issue, let's assume that goes your way and that gets upheld, what's the first step? What's the first question we ask? The first question I would say is under Atlantic Marine, is there a valid agreement to bring in the claims in the foreign forum and do the claims raised fall within that? And as part of the first question, is part of that inquiry whether or not a seaman can bargain away forum and substantive law in a case where federal statutory remedies are involved? I would say that it could be. The law places a heavy burden on a party who's attempting to avoid a forum selection clause. Therefore, at the district court level, if they were going to rely on that as a basis to invalidate the forum selection clause, it was their burden to come forward with evidence and proof that, you know, I believe what they were arguing was like unethical bargaining power. And I don't believe that they presented any evidence on that matter. And I also want to address the paper entity arguments that opposing counsel has made because I believe that's another area where they didn't necessarily develop the factual record that would have permitted the court to find the forum selection clause was invalid. The evidence that is in the record is that both were duly organized Bahamian corporations registered in the Bahamas. Some of the testimony that appellants themselves submitted is that at least with respect to CMI Leisure, the company has its own bank accounts. They have a board of directors. They pay the seaman out of the bank accounts of the Bahamian entity. So I would argue that the appellants have not established or met their burden in the district court to demonstrate that the forum selection clause should not be enforced. Help me with Vycand. Yes. The reason I ask you for the help is when I look at the district court opinion, the district court found that the Miami CMI companies could invoke the forum selection clause based on equitable estoppel. But when it came to Vycand, it employed a completely different rationale. A rationale, if I am correct, that neither party presented. You're correct on that. And the entirety of the district court's finding with respect to Vycand consisted of the one paragraph that I read into the record earlier. But are you relying on that rationale to sustain the judgment on Vycand? The reason I raise the question is the relationship between Vycand and these other defendants is so completely different. There was no close relationship between Vycand and the signatories, either the plaintiffs or the Bahamian companies. Beyond that, there's no evidence Vycand ever directly interacted with either of them. It was simply a consulting company that allegedly consulted on whether a cruise ship should or should not set sail during COVID-19. Is Vycand so closely related to the dispute here that they could use this clause? Is that a viable theory? It is under Lipcon versus Underwriters at Lloyd's of London, which is a decision out of this circuit from 1998, which permitted the defendant in an underlying case to enforce a forum selection clause against Vycand. The reason I raise it, of course, Lipcon was different in that it didn't involve a maritime dispute at all, and the contract was central to the plaintiff's claims. Correct. Here, this is a maritime case, and the contract is only irrelevant to a Jones Act claim. I'm not saying they couldn't bargain it away if the appropriate parties had entered into an appropriate contract. I have little doubt that an employer and an employee could agree to bargain away X, Y, or Z. Even if it was a Jones Act case, they could agree to be bound by a foreign jurisdiction's court and by a foreign jurisdiction's law, but that's not what we have here. So it struck me that Lipcon wasn't very helpful because it looked a whole lot different. It wasn't a maritime case, and the plaintiff didn't rely on the contract. Are those not sufficiently significant distinguishing features? Well, reliance on the contract is an element if you're relying on equitable estoppel. Lipcon was sort of a separate basis, closely related. As I mentioned, there's a number of different exceptions to the rule about invoking that, but in terms of the basis for the district court's finding, I believe it is supported by the allegations of the amended complaint in which the plaintiffs allege that Vicand, along with the other two defendants, and this is document 16, paragraph 27, they allege that representatives of all three defendants, including Vicand, met the vessel in Argentina for the purpose of determining whether to start on the next cruise. And their allegations of negligence against Vicand are grounded in these allegations. So they're essentially alleging that all three of these defendants collectively made this decision that they claim ultimately harmed them. Ms. Sullivan, thank you very much. Thank you very much. Mr. Parrish, you have five minutes for rebuttal. Thank you. I'd just like to start by pointing out that I was wrong to concede part of your question about Zumlitz. Zumlitz did involve a choice of law provision. In footnote three, the court said that the contract of employment noted that, quote, rights and duties under this contract of service shall be governed by Norwegian seamen's regulations. So there was at least a choice of law there. There's a dot, dot, dot ellipses following that. I don't know whether that contract, because the contract doesn't appear whether it also had a- I'm not sure. Well, maybe that's a choice of law clause. Okay. In any event, so I think Vicand cannot certainly take advantage of the equitable estoppel. And in terms of Lipkon, not only was it not a maritime case, but the closely related entity to the investor there was the investor's wife. Vicand is not that closely related. They are a Broward-based medical services provider that enters into a separate contract with the Miami-based companies, not with the Bahamian-based paper company. So I don't think there's any way for them to take advantage of- or an agent or in any way. So I think Vicand, and what it appears that the district court did, was undertake a but-for foreseeability analysis. And we know that under Byers and other case law interpreting, that but-for involvement is not enough. If, Judge Jordan, we're going to do an analysis, and you asked what the proper sequence would be, it seems to me you have to follow the Lawrence and Roditis sequence, which is the first half of the Zumwalt sequence, and determine whether or not the Jones Act applies. And you would ask me, I didn't get a chance to answer you, what the best case was. Even with a forum selection clause or a choice of law clause? Well, so I think so, yes. I mean, virtually every one of these contracts is going to have at least a choice of law, if not a forum. And it's merely one of the factors. What's the law of the forum? It's one of the seven original Lawrence, in fact. You normally don't ask that question when you've got a forum selection clause. Well, and so that's... Because you're avoiding the law of the forum by going somewhere else. True, but then the other, what are the, the cases all talk about, you know, this was a Dutch company, and they had this provision, that provision, and very often they are either forum selection or choice of law, sometimes both. But what the Supreme Court said in Bremen, and I think it's apples and oranges, in Bremen the court said eight times we're talking about, you know, entities that engage in good faith bargaining where there's no, you know, no basis to suggest that there was overweening power and that kind of thing. Now I want to get to your case in Davis, which I cited last week as supplemental authority, Davis versus Oasis legal. Because it's a case that applies Atlantic Marine in a non-maritime context to be sure, it was the Georgia usury law, but it looked at one of the exceptions to applying a forum selection clause, one that we argued in our first point, which is enforcement of the clause would contravene a strong public policy. We say that public policy are the Jones Act rights and remedies to a jury trial, which would, is clearly obliterated by, and seems to be the only reason for setting this company up in the Bahamas. And in that case, this court said that you look to statutes to determine public policy. And in Bremen it said look to statutes or decisional authority. We have, you know, about 200 years of semen, or the words of Admiralty common law, and 100 years of the Jones Act in existence now. And so those are very strong expressions of US policy with no countervailing arbitration. Your position, I don't want to put words in your mouth, and your position may be the right one, but it is that when you do that analysis, when you complete that analysis, you cannot as a semen be allowed by a federal court to bargain away forum and substantive law when you have Jones Act or other federal statutory remedies. Because by doing so, you are violating the public policy of the United States and giving up remedies that the government here thinks should be available to semen. At least with respect to the Jones Act. Okay, limited to the Jones Act. That's your position, that you cannot bargain away Jones Act remedies. But not when what you're doing is sending it with a forum selection clause to a tribunal that will do away with your right to jury trial under the Jones Act. And once the determination is made that the Jones Act actually applies. If you send them to, if you send the claims to the United Kingdom and you fall under the subset of civil cases that still get tried to a jury, does public policy prohibit that? That's a closer case, and it may not. It may not. You know, in Davis, you were dealing with a usury law in Georgia, and notwithstanding, Atlanta Green found that, that stated the public policy of the state of Georgia, and therefore the forum selection clause was not enforceable in that case. Now, we heard a lot about what we proved or didn't prove, but we had no chance virtually to prove anything. The case was, there was no oral argument. The case was on a motion to dismiss for lack of venue and for failure to state a claim. The judge, in his order for the first time, turned it into a forum selection. You mean forum of nonconvenience. Nonconvenience analysis, and we were given no opportunity. But the record in this case, if you were to look at it, and even if you were to apply Atlantic Marine, the record in this case on the public interest factors alone would suggest that it would be one of those rare occasions under Atlantic Marine, should that case apply, we don't believe it does at all, where the public interest factors would require that the forum selection clause be ignored, not both because it's against public policy, but also because if you look at those, who's got an interest in this? Florida does, not the Bahamas. The only interest in the Bahamas is some law firm that gets paid a little bit of money for a mail drop. And we do have record evidence that those are the facts of the case. So, in any event, this case should be reversed and remanded, and we'll leave it to the court to decide precisely how to do that. All right, Mr. Powers, thank you very much. Ms. Sullivan, thank you very much as well. All right, that's it for the docket today. We're in recess until tomorrow.